## Watkins v. Commonwealth.

(Decided January 25, 1912.)

### Appeal from Powell Circuit Court.

Instructions.—In giving instructions to a jury on the trial of one for murder by shooting another with a pistol, any reasoning which would justify the omission of the term "malice aforethought" would also justify the omission of the word "wilfully." The accused must have entertained malice aforethought at the time he killed decedent, if he did kill him, to be guilty of murder, and this question should have been submitted to the jury by the instructions.

KELLY KASH, J. D. ATKINSON, T. T. COPE and W. L. KASH for appellant.

JAMES GARNETT, Attorney General and TOM B. McGREGOR, Assistant Attorney General for appellee.

OPINION OF THE COURT BY JUDGE NUNN—Reversing.

This case will have to be reversed for the reasons herein after stated, therefore, we will refrain from relating the evidence in detail and commenting upon it. It is sufficient to say that appellant was indicted for the murder of Lewis Napier. The Commonwealth introduced several witnesses who testified that appellant struck Jim Barnett with his pistol in his hand and then deliberately turned his pistol and fired twice at Napier, an innocent bystander who immediately sank to the earth and expired. Appellee also endeavored to show that appellant's desire to keep Napier from being elected school trustee on the day of the killing, was the motive which prompted him to kill Napier. Appellant's testimoney conduced to show that he had no interest whatever in the school election; that his feelings toward Napier were kind; that he had only known Napier for a week or ten days and had never had any difficulty or hard words with him; that he did not shoot Napier or attempt to shoot him; that he had a few unpleasant words with Albert Barnett; that Jim Barnett, who was drunk, heard the unpleasant words and ran to him using very violent and obsene language and, he, appellant drew his pistol from his saddle pockets which he was carrying on his shoulder, and struck Jim Barnett on the head knocking him down.

Appellant's testimony further shows that when this lick was struck the pistol fired accidentally and the ball passed in the opposite direction from where Napier was standing; that when Jim Barnett fell appellant stepped over him and started down the road; that he went within three or four feet of Napier; that when appellant stepped over Jim Barnett, Albert Barnett, a brother of Jim, began to shoot at him, but his shots missed appellant and entered the body of Napier, causing his death. There was much evidence introduced connecting many persons who were on the election grounds that day, with the difficulty, and also showing that many of them were drunk or drinking, and that many pistols were used during the difficulty. As appellant alone was on trial, we have stated only enough of the testimony to show the theory of each side in so far as they affect appellant.

The court gave the jury only three instructions which are as follows:

"1. If the jury believe from the evidence beyond a

reasonable doubt that in Breathitt County and before the finding of the indictment the defendant, Sam Watkins, wilfully shot and killed Louis Napier the jury should find the defendant guilty of murder and fix his punishment at death or confinement in the penitentiary for the period of his life in the discretion of the jury.

"2. The word 'wilfully' as used in the first instruction means intentionally and not accidentally and although the jury may believe from the evidence beyond a reasonable doubt, that Napier was killed by a ball from Sam Watkins' pistol yet, if they believe, from the evidence that the discharge of the pistol at the time was accidental and not intentional on the part of Sam Watkins, they should find him not guilty.

"3. Unless the defendant has been proven guilty beyond a reasonable doubt the jury should find him not guilty."

Objection is made to the first instruction because it only required the jury to believe that appellant "wilfully" shot and killed Napier. "Wilfully" is defined in the second instruction as meaning "intentionally and not accidentally." In other words, the instruction did not require the jury to believe, in order to convict, that the shooting was done either feloniously or with malice aforethought. So far as our knowledge extends, the courts of Kentucky from their foundation to the present time have required the jury to believe from the evidence beyond a reasonable doubt, that the accused wilfully, unlawfully and with malice aforethought committed the crime charged, before it was authorized to find him guilty of murder. In the case of Shelton v. Commonwealth, 145 Ky., 543; 140 S. W., 670, the lower court omitted these words from the instruction on murder, and this court, in reversing the case, used the following language:

"It is manifest that the jury were not instructed on all the law of the case; and also manifest that the instruction as to murder was erroneous, for it omitted an important element essential to the commission of that crime, viz., the words 'malice aforethought.' To make the instruction conform to the law, there should have been inserted in it, between the word 'wilfully' and the word 'shot,' the words 'unlawfully and with malice aforethought.' "

The court said in that case that malice aforethought was an important element and essential to the com-

mission of that crime, and when appellant in the case at bar pleaded "not guilty" he put that important element in issue, but the lower court, by its instructions, undertook to and did determine from the evidence, that important element. Unquestionably, this was a matter which should have been determined by the jury. The case of Tutt v. Commonwealth, 104 Ky., 299, was reversed solely because the words named above were omitted from the instructions. In that case the court said:

"It is not necessary to discuss the question of the guilt of appellant in this case. The testimony is not in all respects the same, but whether the testimony shows the defendant guilty or not is not involved in the discussion of the instructions given. Unless the killing was with malice aforethought, the defendant is not guilty of murder. The instructions given authorize the jury to find the defendant guilty of murder, and inflict the most extreme penalty known to the law, without requiring them to find beyond a reasonable doubt that the killing was with malice aforethought."

Any reasoning which would justify the omission of the term "malice aforethought" would justify the omission of the word "wilfully," and render it only necessary for the court to instruct the jury that unless they believe from the evidence that the shot fired by appellant was accidental, they will convict him of murder. The effect of this would be that the court would determine the guilt of appellant rather than the jury, which would deprive appellant of a constitutional right, to-wit, the right of a trial by a jury as provided for by section 7 of the Constitution. Appellant must have entertained malice aforethought at the time he killed Napier, if he did kill him, to be guilty of murder, and this question should have been submitted to the jury. The court had no right to determine it.

Albert Barnett, a witness for the Commonwealth, testified that appellant shot Napier and killed him, and he was then asked on cross examination, if he did not tell several persons, naming the persons, times and places, that he would be bound to swear when put upon the stand, that he accidentally killed Napier when shooting at appellant, and he denied it. Afterwards, the several persons were put upon the stand and they swore that Barnett did make such a statement to them, and the court admonished the jury not to consider their statements as substantive testimony; that it was only com-

petent to affect the credibility of the testimony of Barnett, if it did affect it. Appellant contends that this was error, that the jury should have been allowed to receive the statements of these witnesses as substantive testimony. Barnett was only introduced as a witness, he was not a party to the prosecution, nor is it contended that the statements were a part of the res gestae, therefore we conclude the court was right. It appears that on the trial, Combs, who was a candidate for school trustee and who was being voted for on the day of the killing, testified for appellant and stated that appellant did not kill or shoot Napier; that Albert Barnett did kill him accidentally when shooting at appellant. It seems that Combs was also arrested for taking part in the difficulty and he was asked, when under arrest, if he did not state to one Hudson in the presence of Shad Fugate that he would be bound to swear, if put upon the stand, that appellant and his brother, Judge Watkins, shot and killed Napier, and Combs said he had no recollection of making such a statement. Fugate was then placed upon the stand and he swore that Combs did make the statement in his presence, but the court did not admonish the jury that it should consider Fugate's testimony only in so far as it affected the credibility of Combs as a witness, if it did so. We suppose the court failed to do this by oversight, or that the admonition was unintentionally omitted in transcribing the bill of evidence. It should not, however, be allowed to occur upon another trial.

For these reasons, the judgment of the lower court is reversed and case remanded for further proceedings consistent with this opinion.