## Watkins v. Commonwealth.

(Decided June 12, 1912.)

### Appeal from Powell Circuit Court.

1. Homicide—Evidence Tending to Show Ill Will Toward Deceased—Admissibility Of.—Upon the trial of appellant for the killing of Napier the evidence of witnesses that appellant said shortly before the shooting that he was "a bad man from Lick Branch of Quicksand; that he had been in trouble once and had gotten out of trouble; that he could get in again and get out and that he would tear up the election before Napier should be elected," (Napier whom he killed being a candidate for school trustee at the election) was properly admitted, as it tended to show appellant's ill will toward Napier, and manifested a motive for the killing.

2. Trial—Refusing Continuance.—The application for a continuance was properly refused. The affidavit did not disclose the nature of

the wife's or father's illness. The wife would not have been a competent witness, and it was not made to appear that the presence of his father was required at the trial.

3.    Trial—Absence of Counsel.—The absence of one of two or more counsel for defendant is not a sufficient ground for a continuance, unless it clearly appears that a fair trial cannot be had in his absence.

KELLY KASH, W. L. KASH for appellant.

JAMES GARNETT, Attorney General, CHAS. H. MORRIS, Assistant Attorney General for appellee.

OPINION OF THE COURT BY JUDGE SETTLE—Affirming.

This is an appeal from a judgment of the Powell Circuit Court, entered upon a verdict whereby appellant was found guilty of the murder of Lewis Napier, and his punishment fixed at confinement in the penitentiary for life. This is the second appeal in the case; the opinion on the first appeal will be found in 146 Ky., 449; and, inasmuch as the facts stated therein do not materially differ from those presented by this record, it will not be necessary to go into them in detail at this time. Suffice it to state that the killing for which appellant was convicted, took place during an election for school trustee, on South Quicksand Creek, in Breathitt County, in August, 1910. The appellant and his brother, Judge Watkins, though not voters in the school district, attended the election and entered into a conversation with some of the bystanders. It appears from the record that appellant and a number of these were armed and some were drinking. Judge Watkins passed into the building where the election was being held and facetiously asked to be appointed sheriff of the election. According to the evidence of the Commonwealth, appellant remained outside of the building and got into an altercation with Albert Barnett, when Jim Barnett interfered and applied to him a vile epithet; whereupon appellant struck Jim Barnett upon the head with his pistol and then deliberately turned the weapon upon Lewis Napier, an innocent bystander and one of the candidates for school trustee, to whose election he had previously expressed himself as being opposed, and shot and killed him. Following which a general fight occurred in which appellant and others fired from fifteen to twenty shots.

Appellant's own testimony and that of his witnesses,

was to the effect that he did not shoot at or in the direction of Napier; but that when he struck Jim Barnett with his pistol, Albert Barnett began to shoot at him and in the direction of Napier, whom he shot and killed.

Various grounds are relied upon by the appellant for a reversal of the judgment; among others, it is insisted for him that the trial court did not properly instruct the jury. This contention cannot be sustained because the instructions contain no error prejudicial to the appellant, and were given in the form directed by this court in the former opinion.

It is also insisted for him that the verdict is unsupported by the evidence. This contention is as untenable as the first, for, notwithstanding appellant's attempt to prove that he did not shoot Napier, or if he did that it was accidental, that of the Commonwealth strongly conduced to prove that not only was Napier intentionally shot by appellant, but that the shooting was premeditated and with malice aforethought. We are, therefore, unable to say that the verdict is without support from the evidence.

We do not think appellant's objections to the evidence admitted in the court below should have been sustained. He complains of the evidence showing the entrance of Judge Watkins, appellant's brother, into the building where the election was held, and of his asking to be made sheriff of the election. It is patent that Judge Watkins' request to be made sheriff of the election was a facetious statement and but a circumstance preceding the shooting; and while we cannot say that it was competent, it was not material or prejudicial to appellant's rights, for which reason it affords no ground for a reversal of the judgment.

Complaint is also made by appellant to the admission of the testimony of Tharp, Jackson and Trustey; that of Tharp being to the effect that a half hour before the shooting he heard appellant say at the place of election that "He was a bad man from Lick Branch of Quicksand; that he had been in trouble once and gotten out of trouble; that he could get into trouble again and get out, and that he would tear up the election before Napier should be elected." That of Jackson and Trustey was to the effect that appellant said to them and others, on Thursday before the election, that he was going over to South Fork to help elect Richard Combs trustee in order to de-

feat the "damned Manns" out of the school. Combs was a candidate against Napier for the office of school trustee and was supposed to have had the backing of the Manns for the place.

We think the testimony of these three witnesses was properly admitted, as it tended to show appellant's ill will toward Napier and, in a large measure, manifested a motive for his act in shooting and killing Napier.

Appellant's final complaint is that the court erred in refusing him a continuance upon his affidavit as to the illness of his father and wife; and the absence of Cope and Hogg, attorneys alleged to have been employed in his defense; the fee of one of whom he claimed to have paid in full and that of the other in part. The affidavit does not disclose the nature of the father's or wife's illness. The wife would not have been a competent witness in his behalf and it was not made to appear from the affidavit that the presence of appellant's father was required at the trial as a witness. It was only claimed that his presence and advice would be of benefit to appellant on the trial, and that the illness of the wife so disquieted appellant as to disqualify him for properly presenting his defense. It does not appear from the statements of the affidavit that the advice or assistance of the father could not have been supplied appellant by others of his family present at the trial, or that his wife's illness was of a character to produce the disquietude of mind claimed by him. As this ground for a continuance is a matter which naturally addressed itself to the discretion of the judge of the trial court, whose knowledge of the case and acquaintance with the parties doubtless enabled him to know whether it was a mere subterfuge for delay, we are not inclined to hold that his refusal to grant the continuance on that ground was an abuse of discretion, in the absence of a showing that the result of the trial might have been different had the father been present or the wife not been ill.

The affidavit furnishes no reason for the absence of the attorneys, Cope and Hogg. It did intimate that the latter had been so engaged in the performance of his duties as a member of the State Senate that he was unable to prepare appellant's defense. But this explanation is entitled to little weight in the light of the fact that the General Assembly adjourned March 12th; and as appellant's trial did not begin until March 25th there was

an interval of thirteen days during which time Hogg might have made the necessary preparation for the defense. In view of the fact that appellant was represented by attorneys, J. D. Atkinson, Kelly Kash and W. L. Kash on the first and last trials of his case in the court below; and of the further fact, that it is apparent from the record that the defense they interposed for him on the last trial was thoroughly and skillfully made, we fail to see how he was or could have been prejudiced by the absence of attorneys Cope and Hogg on the last trial; the latter of whom did not appear in his defense on the first trial. In the case of White v. The Commonwealth, 140 Ky., 9, the principal ground urged for a reversal of the judgment of conviction was the absence from the trial of his attorney, J. B. Weller, who had defended him on a former trial of the case; yet this court held that the absence of Weller on the last trial did not entitle appellant to the reversal sought, although he was only represented by an attorney of the court's appointment, who had also assisted in his defense on the first and second trials. In the opinion it is said:

"In response to this (i. e., argument as to absence of counsel) it may be said that defendant was represented on the trial by a reputable attorney of high standing at the bar, who had been appointed by the court and who was thoroughly familiar with every phase of the case. * * * We deem it proper to say that Mr. Riley had been attorney for the accused from the first, whereas Mr. Weller, the absent counsel, had come into the case at a later period. Mr. Riley was, therefore, as equally familiar with the facts of the case as Mr. Weller."

We have repeatedly held that the absence of one of two or more counsel for defendant is not a sufficient ground for a continuance, unless it clearly appears that a fair trial cannot be had in his absence. (Stevens v. Commonwealth, 9 R., 742; Brown v. Commonwealth, 7 R., 451; Cook v. Commonwealth, 114 Ky., 586.

Being convinced from our reading of the record that appellant received a fair trial, the judgment is affirmed.