### Perry v. Commonwealth.

(Decided October 30, 1923.)

## Appeal from Jefferson Circuit Court (Criminal Division).

1. Criminal Law—Continuance Not Necessarily Granted on Account of Absence of One of Several Lawyers.—Where defendant has more than one lawyer a continuance will not necessarily be granted on account of the absence or inability of one of his lawyers to attend and participate in his trial, and there was no error in refusing a continuance by reason of sickness of a lawyer's wife where he nevertheless appeared at the trial.

2. Homicide—Accused Held Not Entitled to Directed Verdict.—In a homicide case, where defendant was convicted of manslaughter, held, that accused, under the evidence, was not entitled to a directed verdict in his favor.

3. Homicide—Evidence Sufficient to Sustain Conviction for Manslaughter.—In a prosecution for homicide, evidence held sufficient to sustain a conviction for manslaughter.

THOMAS & BROWN for appellant.

THOS. B. McGREGOR, Attorney General, and LILBURN PHELPS, Assistant Attorney General; for appellee.

OPINION OF THE COURT BY CHIEF JUSTICE SAMPSON— Affirming.

From a judgment of conviction, fixing his punishment at confinement in the state penitentiary for a term of three years on a charge of manslaughter, appellant Perry appeals. His grounds for reversal of the judgment are set forth in his brief as follows:

"1.   The court erred in overruling defendant's motion for a continuance which is supported by affidavits.

"2.   The court erred in not giving peremptory instructions upon motion of defendant's counsel.

"3.   The Commonwealth failed to prove anything alleged in the indictment and the court erred in requiring defendant to introduce proof of any kind."

We will consider these grounds in the order set forth.

On July 20, 1922, appellant Perry shot and killed Reverend Thompson at No. 1915 Madison street, Louisville, in appellant's home at that number. Both were colored men. Thompson was the pastor of the church to which Perry belonged. According to appellant's evidence he left home that morning with his wagon to go up

town, but after traveling a short distance discovered he had lost a part of the gearing from his horse, whereupon he retraced his steps, and on entering the back door of his house he heard his wife screaming, begging and talking to some one in the house. When he entered the front room he found Rev. Thompson in a compromising position with appellant's wife on the couch. Appellant had a pistol, and when the Rev. Thompson sprang at him and called him names appellant fired one shot into the ceiling in an effort to frighten the minister, but this did not have that effect and the minister grappled with appellant and they fought for some seconds in the house until appellant found himself in danger of death when he fired the shot which took the life of Thompson.

The theory of the Commonwealth is, that appellant enticed Thompson into his home for the purpose of murdering him; or, if not that, then Perry, who was jealous of his wife and had suspected the ice man of having improper relations with her, returned to the house for the purpose of intercepting his wife's paramour, and coming upon Thompson shot him without provocation. Thompson and appellant lived on adjoining lots, and apparently were good friends. Just before Perry left to go uptown he and the minister had a conversation at the rear of the house. The Commonwealth proved by the officers who appeared upon the scene immediately after the shooting that everything in the room where the homicide occurred was in good order and that there was no appearance whatever of a fight or struggle between the men and none that the minister had assaulted appellant's wife on the sofa in the room, as testified to by appellant, it being shown that on the sofa were a number of pillows and a stack of clean laundry, none of which had been disturbed. No eyewitness save appellant Perry testified at the trial and the facts are left in doubt. Certain it is that appellant did not tell the truth about the tragedy. He may have had a perfectly good defense, but the story he related upon the witness stand as to how and why he killed the minister is not consonant with reason, and the jury no doubt concluded that the defense was a fabrication and that appellant killed Thompson at a time when it was not necessary in order to protect appellant or his wife from danger.

1. The trial occurred almost a year after the homicide, appellant having been granted more than one con-

tinuance. Appellant moved for another continuance and filed in support thereof the affidavit of his attorney, W. C. Brown. By this affidavit it is shown that the wife of Brown was very sick and that she had been so for a week or more before the making of the affidavit, and that on account of her sickness the affiant, Brown, was much upset, worried and worn out and physically unfit to undertake the trial. As appellant had other counsel, to-wit, William H. Thomas, the court overruled the motion for a continuance and directed a trial. Thereupon both Brown and Thomas represented appellant on the trial of his case. We have held that where a defendant has more than one lawyer a continuance will not necessarily be granted on account of the absence or inability of one of his lawyers to attend and participate in his trial. Cook v. Commonwealth, 24 Ky. Law Rep. 1409. In as much as both of appellant's lawyers were present and aided in the conduct of his defense we are sure that the trial court made no mistake in overruling the motion for a continuance.

2. From the statement of the substance of the evidence above, the court is of opinion that appellant was not entitled to a directed verdict in his favor.

3. The Commonwealth proved the homicide and introduced a great deal of evidence tending to show that appellant had prepared himself to take the life of some one, and in pursuance to that purpose did kill Thompson. Just how the homicide occurred is not known, but it is reasonably certain that appellant did not tell the truth about how it occurred, and the jury was warranted in concluding that he withheld the facts and substituted a new story in order to vindicate himself. There was enough competent evidence for the Commonwealth to convince the jury that appellant wrongfully shot and killed the deceased. This evidence was of sufficient probative value to sustain that finding.

While appellant complains that the court allowed the Commonwealth to introduce incompetent evidence against appellant, our attention has not been directed to incompetent testimony which was prejudicial to the substantial rights of appellant.

In the absence of error to the prejudice of the substantial rights of appellant the judgment must be affirmed.

Judgment affirmed.