## Fairchild v. Commonwealth.

May 2, 1950.

R. C. Tartar, Judge.

742

Duncan & Duncan for appellant.

A. E. Funk, Attorney General, and Russell Jones, Commonwealth's Attorney, for appellee.

JUDGE HELM—Reversing.

Appellant, Maurice Fairchild, and John Acrey, Willie Crabtree, Lester Gregory and Ray Burgess were jointly indicted, charged with the murder of Woodrow Cooper. Separate trials were had. Appellant was found guilty of manslaughter and his punishment fixed at 21 years in prison. He appeals, assigning as errors: (1) The evidence is not sufficient to support the verdict; (2) the court failed to instruct upon the whole law of the case; and (3) a new trial should have been granted on the grounds of newly discovered evidence.

This is a companion case to Acrey v. Commonwealth of Kentucky, 312 Ky. 732, 229 S. W. 2d 748. After a severance was had the Commonwealth elected to try Acrey, but Acrey not being ready for trial the Commonwealth elected to try appellant. Appellant was tried first. The testimony for tne Commonwealth was substantially the same as that in the Acrey case. The testimony for the Commonwealth is summarized there ann is not repeated here.

The witnesses for the defense were appellant, Lester Gregory, John Acrey, and Ray Burgess. Willie Crabtree did not testify. In the case of Crabtree v. Commonwealth, 312 Ky. 768, 229 S. W. 2d 756, decided from the testimony of the other defendants that Crabtree was drunk and had "passed out" at the time of the trouble resulting in Woodrow Cooper's death.

The testimony for appellant is: Appellant, Maurice Fairchild, 26, lives at Monticello; knew Willie Crabtree, Lester Gregory, Ray Burgess and John Acrey. He had seen Woodrow Cooper before and was with him the day he was killed. The afternoon of that day he saw John Acrey, Lester Gregory, Willie Crabtree and Woodrow Cooper. John Acrey was driving Crabtree's dark green, four-door, two-seated 1947 Buick car. When he first saw them "they were setting out in the woods with a bucket of ice water * * * drinking whisky and chasing it with water." There Crabtree "passed out" and "Woodrow seemed pretty well drunk." While he was with them they had a pint of whisky, a half-case of beer, and a half-gallon of moonshine. That night Ray Burgess joined them in Monticello. They then made their second trip to Somerset to go to the carnival. When they got to the carnival grounds it was closed. They started back to Monticello. Appellant says, "I was getting sleepy myself and the next thing I knew we was down where the trouble started." Asked as to how the trouble started, he said Cooper wanted to stop. After he asked Acrey four or five times, Acrey "stopped sudden like, throwed the brakes on and Cooper * * * got banged up." Cooper opened the door and got out on the right side and said, "Acrey I am going to beat hell out of you over this right now." Acrey shut the car off and met him by the back bumper. Appellant heard some kind of commotion out there, looked over and saw Cooper lying on the ground by the left front door and Acrey standing over him. Acrey hit Cooper two or three times. Appellant got out on the right-hand side and said to Gregory and Burgess, "Boys get out and separate them before the law comes along and gets us all." Gregory and Burgess, who were on the back seat, got out on the left side. They tried to get Woodrow back in the car. He wouldn't get in but finally said, "Let John get in and I'll get in." Acrey got in and started racing the motor. Cooper jerked loose from Gregory and Burgess and said, "John, you'll have to do that again" and grabbed Acrey's head or neck with his hands and pulled his head around. Acrey got loose, got out of the car, struck or pushed Cooper and caused him to fall on the road. Acrey got back in the car and started the car. As he started, appellant said, "John, don't leave that man here, somethings liable to happen." Appellant "kept begging him and once

he started to turn around and come back, but didn't." Appellant says that he did not have any trouble with Woodrow; did not strike or injure him; that "Acrey was the only one that had any trouble with Woodrow." At the time of the trouble Crabtree was asleep, or "passed out."

Lester Gregory, 18, tells about the trouble when Acrey stopped the car. The trouble started at the back left side of the car. Woodrow hit Acrey; Acrey hit him back, knocked Woodrow down; he got up, made a "lick at John and fell on his face. It mashed his nose and face." He says that Maurice Fairchild did not take any part whatever in that trouble; that he and Burgess did not take any part in it; that he and Burgess got Woodrow by the arm and tried to get him back in the car; that Acrey got in; Cooper got Acrey "by the neck and kind of jerked him out of the car." During the difficulty there were marks and some blood on Woodrow Cooper's face; Acrey had blood on the palm of his hand. As they drove away Woodrow was on his hands and knees. The car was not driven over him.

Ray Burgess said Woodrow told Acrey to stop; Acrey "stopped real quick and his head bumped the seat * * *. It made him mad." He got out and John met him on the left side of the car. John "hit him and knocked him down." John got in the car, Woodrow opened the door, grabbed John around the neck; John got out "hit him and he fell beside the car. * * * John jumped in the car and drove off and left him." Burgess "looked back through the back glass and he was going toward the outside shoulder of the road on his hands and knees." John Acrey was the only one that had any trouble with him. Fairchild did not strike Cooper or do anything to him. Burgess says as they drove away he and Fairchild tried to persuade Acrey to go back and get Woodrow.

John Acrey says he was driving the car; that he and Woodrow "scuffed a little, * * * had a little fight." He says that none of them pitched Woodrow out of the car or ran the car over him. Acrey says that Fairchild did not strike or do anything to Woodrow.

The Commonwealth maintains that Fairchild aided and abetted Acrey, but appellant and all the other witnesses state that Fairchild took no part in the trouble.

An aider and abetter is one who advises, counsels, procures, or encourages Another to commit a crime, but the term does not include one who was present pursuant to lawful purpose and took no part in the unlawful acts. Mere presence at the scene of a crime is not enough to constitute one an aider or abetter in the commission of a crime. 6 West Ky. Digest, Criminal Law, Key 59(3):

We believe the trial court should have sustained appellant's motion for a peremptory instruction. Upon another trial, if the testimony should be substantially the same as here, the court should direct a verdict for appellant. All other questions are reserved.

The judgment is reversed with directions for proceedings not inconsistent with this oinion.